UNIVERSAL WINDING CO. v. FOSTER MACH. CO.

(Circuit Court, D. Massachusetts. April 10, 1905.)

No. 1,607.

1. PATENTS—INFRINGEMENT—COP-WINDING MACHINES.

The Wardwell patent, No. 506,959, for an improvement on the cop-winding machine of patent No. 480,157 to the same patentee, claims 6 and 7, cannot be given the broad construction required by their terms, but must be limited to the specific, independent means shown in the specification for producing an increment of motion in the thread-guide actuating shaft or in the cop shaft, or the mechanical equivalent of such means. As so construed, *held* not infringed.

2. SAME—TENSION DEVICE FOR COP-WINDING MACHINE.

The Wardwell patent, No. 509,413, for a tension device for cop-winding machines, claim 1, is for a new combination which produces an improved result in the winding art, and is entitled to a fairly liberal construction. Also *held* infringed.

3. SAME.

The Wardwell patent, No. 562,263, for a cop-winding machine specially adapted to the winding of conical cops, claim 3, construed, and *held* not infringed.

In Equity. Suit for infringement of letters patent No. 506,959, dated October 17, 1893, No. 509,413, dated November 28, 1893, and No. 562,263, dated June 16, 1896; all relating to cop-winding machines, and granted to Simon W. Wardwell, Jr. On final hearing.

Dickerson, Brown, Raegener & Binney, for complainant.
Roberts & Mitchell, for defendant.

COLT, Circuit Judge. In this bill the complainant charges infringement of three patents issued to Joseph R. Leeson, assignee of Simon W. Wardwell, Jr.—No. 506,959, issued October 17, 1893; No. 509,413, issued November 28, 1893; and No. 562,263, issued

June 16, 1896. These patents relate to cop-winding machines, and they cover improvements in an advanced art. Patent No. 506,-959 relates to the increment and adjustable mechanisms, patent No. 509,413 to tension devices, and patent No. 562,263 to means for winding a conical cop as distinct from a cylindrical cop.

Upon a comparison of the Wardwell machine with the defendant's machine, there is manifestly a wide difference in the specific means employed. It is clear that the defendant has not embodied in its machine the forms of mechanism disclosed in the Wardwell patents. The complainant therefore does not rely upon the claims of the patents covering the specific devices shown in the drawings and described in the specifications, but upon the broad claims in which general descriptive terms are employed.

From the evidence and brief of counsel, the complainant seems to rest its case largely on the underlying proposition that Wardwell solved the problem of laying a Fiji wind, which differs essentially from all other kinds of wind; that he was the first to invent a machine capable of producing this wind; that such machine possesses an accuracy of operation and a capacity for nice adjustment which differentiate it from all other winding machines; and finally that the Wardwell machine marks a distinct and revolutionary advance in the art.

With respect to this position the complainant is met at the outset by the difficulty that this broad issue has already been adjudicated in the case of Universal Winding Company v. Willimantic Linen Company (which arose in the Second Circuit) 82 Fed. 228, affirmed 92 Fed. 391, 34 C. C. A. 415. In that case this complainant brought suit upon three earlier Wardwell patents, covering respectively the machine for winding a Fiji cop, the process, and the product. It was there decided that the method and product patents were void for want of patentable novelty. As to the machine patent, it was held that it must be limited to the kind of means described, and that it did not embrace unequal cone pulleys as an equivalent of such means; that, since the patent described means whereby there are produced two sources of motion, or two distinct speed relationships between the thread-guide operating shaft and the cop shaft, it was not infringed by a machine wherein the means operated to produce only one such source of motion, or a single speed relationship; in other words, that the increment mechanism, such as the arms, pawl, cam, gears, etc., disclosed in this Wardwell patent, was not infringed by an increment mechanism composed of adjustable tapering pulleys and belts, although both devices accomplished the same result.

The Wardwell patent in suit, No. 506,959, states that it is for improvements in the machine of patent No. 480,157, which was the machine patent before the court in the Second Circuit. The specification says:

"My invention relates to mechanism for winding cops and bobbins in the manner set forth in my letters patent No. 480,157, dated August 2, 1892, and my invention consists of certain improvements of the apparatus."

These improvements relate essentially to the different specific means employed for securing the necessary increment of motion in the thread-guide actuating shaft or in the cop shaft. These means are shown in figures 1 and 2 of the patent in suit, and in figure 5 of the earlier Wardwell patent. The invention covered by the patent in suit, therefore, is merely for improved means for doing the same thing as was done in the earlier patent. This view is corroborated by a reference to the file wrapper and contents. The first six claims of the original application were rejected by the Patent Office on reference to the earlier Wardwell patent, No. 480,157. The claims of the patent as issued are substantially like these claims, though claim 6 of the application has become claim 7 of the patent. In reply to this rejection, the patentee's solicitor, Mr. Foster, who is the expert witness for the complainant, and was the solicitor for both these Wardwell patents, wrote:

"Regarding claims 1 to 5, we have to point out that in this case the increment of motion is obtained positively by a variation in the relative positions of the gears to each other and to the shafts. In Wardwell's prior patent the gears and shafts always maintain their relative positions, and the increment of motion is obtained by feeding the spool holder, which has proved to require very nice operating mechanism, that can be avoided by the particular mechanism now claimed. In view of the fact that this particular mechanism is all that is claimed, and that it is not shown in the reference, we submit that the claims should be allowed. As regards claim 6, it is admitted that the prior patent shows devices which will accomplish the same object as those specified in claim 6, but they are not combined with the gears so as to shift the position of the gears. In view of the fact that it is common in various kinds of mechanism to drive one part from another through the medium of a disk and a friction wheel bearing with its edge against the disk, it would seem unnecessary to file the model to demonstrate the efficiency of such a contrivance."

This communication shows that at the time the patent was granted the patentee regarded the essence of his invention to lie in the production of the increment of motion by means of "a variation in the relative positions of the gears to each other and to the shafts," or in devices "combined with the gears so as to shift the position of the gears," as distinguished from the increment devices of his earlier patent, which have "proved to require very nice operating mechanism, that can be avoided by the particular mechanism now claimed."

With respect to claim 6, which has become claim 7 of the patent, and is one of the two broad claims now relied upon, it is stated that the "prior patent shows devices which will accomplish the same object as those specified." Further, that the shifting gear arrangement is of the essence of this invention is made clear by the observation in this letter that it is a common form of mechanism "to drive one part from another through the medium of a disk and a friction wheel bearing with its edge against the disk." These are the means described in the patent for effecting "a variation in the relative positions of the gears to each other and to the shafts," and similar devices are shown in the Malin patent of 1886, No. 342,-702. This feature of obtaining the necessary increment of motion by imparting to one of the gears an additional rotary movement

136 F.—56

independent of the shaft is found in varied forms of expression in the first five claims of the patent. For example, claim 1 reads as follows:

"(1) The combination of the winding shaft, a, thread-guide shaft, b, and connections for imparting reciprocation to the thread-guide, gears connecting the two shafts, and means for imparting to one of said gears an additional rotary movement independent of that of the shaft, substantially as set forth."

The present suit is brought upon claims 6 and 7, which are much broader in their language:

"(6) In a machine for winding cops, a revolving holder, a reciprocating thread-guide, and means for varying the relative movement of the holder and guide at each rotation, and adjusting devices for regulating the extent of the varying movement, substantially as described.

"(7) The combination of the winding shaft, the shaft driving the thread-guide, gears connecting the two, means for imparting an additional rotary movement to one of the shafts, and adjustable devices for regulating the extent of said movement, substantially as set forth."

With respect to the last element in these claims, "adjustable devices for regulating the extent of the varying movement," the specification says, "Any suitable means may be employed for shifting the wheel, 15—for instance, a screw shaft, q, having a knob, r." This has reference to the means for adjusting the friction wheel upon the disk, and this feature involved no invention, in view of the prior art as exhibited, for instance, in the Malin patent already referred to.

The real question in this case is the breadth of construction which should be given to the second element in claim 6, "means for varying the relative movement of the holder and guide at each rotation," and the third element in claim 7, "means for imparting an additional rotary movement to one of the shafts." Notwithstanding the broad language in which this element of the claims is expressed, the claims must be limited to Wardwell's actual invention over his prior patent; in other words, to the improved increment mechanism accomplished by a variation in the relative positions of the gears to each other and to the shafts, as distinguished from the somewhat complicated and less precise increment mechanism of the prior Wardwell patent.

A brief reference to the mechanical principles which lie at the foundation of all winding machines, and to the different types of machines, will throw light on the general subject under consideration, as well as on the true position which the Wardwell patent in suit occupies in the art.

In a winding machine, from the very nature of the mechanical laws involved, the character of the wind will always depend upon the speed relation between the winding spindle and the thread-guide, and this speed relation must remain constant throughout a given wind. In machines for laying the ordinary spool wind, each layer of thread in the spool is wound in a continuous helix, and the successive coils are laid side by side. At the end of each layer the helix is reversed, thus forming a succession of layers one above the other. In these machines, from the very character of

the work, the reciprocation of the thread-guide is slow, in comparison with the rotation of the winding spindle. In order to secure a close wind in machines where both coarse and fine threads are to be laid, it is apparent that this speed relationship must be capable of slight adjustment. We have then in these machines what may be termed a normal speed relationship between the winding spindle and the thread-guide, and a necessary variation of this relative movement in order to wind threads of different sizes. In these machines the shoulders or heads on the spool support the ends of the thread mass.

In machines for winding self-binding cops on a quill or tube, it is obvious that the relative movement of the thread-guide to the winding spindle must be more rapid than in the ordinary spool wind, in order that the end coils of thread may be bound down, and so retained in their proper places. In this class of machines a normal speed relationship between the thread-guide and the winding spindle—as, for example, when the thread-guide makes one reciprocation to four complete revolutions of the winding spindle—will manifestly lay a cop in which the successive coils of thread will lie one above the other. In order to lay what is called a close-wound cop, in which the successive coils are laid side by side, we must have a modification of this normal relative movement; in other words, the thread-guide must either gain or lose a fraction during each reciprocation, or the winding spindle must either gain or lose a fraction during such reciprocation. This variation of relative movement is known as the increment or gainage. This increment or gainage is also subject to another slight adjustment where any change is made in the size of the thread. We have then, in close cop-winding machines, first, a normal speed relationship between the winding spindle and the thread-guide; second, a variation of this relative movement to secure the requisite increment; and, third, a still further slight adjustment in case a different size thread is to be laid. This whole problem, therefore, simply resolves itself into the speed relationship between the winding spindle and the thread-guide.

Winding machines may be conveniently divided into the cone-pulley type of mechanism and the gear type of mechanism. If we take two cone pulleys of unequal size, and mount the thread-guide shaft upon the larger pulley and the winding shaft upon the smaller pulley, we can get a relative or normal movement between the shafts of two to one, or three to one, or four to one, etc., according to the relative size of the pulleys; and, if we attach to the machine a device for shifting the pulley belt, we can vary this relative movement so as to obtain an additional movement or increment of motion for the purpose of laying the coils side by side, and we can further regulate or adjust the extent of this varying movement in order to accommodate the machine to different sizes of thread. If we take two gear wheels of unequal size, the larger having a correspondingly greater number of teeth, and so organize them in a machine that the larger wheel actuates the thread-guide shaft and the smaller wheel the spindle shaft, we can obtain a relative or

normal movement between the shafts of two to one, three to one, or four to one, etc., according to the relative size and number of teeth in the wheels. If now we wish to vary this relative or normal movement so as to obtain an additional movement or increment of motion in one of the shafts, it must be done by some independent mechanism.

The cone-pulley type of winding machine is illustrated in the Smith patent, No. 146,210, issued January 6, 1874, although it may never have been used practically to make a Fiji cop. The prior Wardwell patent, No. 480,157, and the Wardwell patent in suit, No. 506,959, are illustrations of the gear type of machine, with independent means for varying the relative or normal movement of the two shafts. The cone-pulley type seems a more simple and less cumbersome form of mechanism, and it appears to have largely supplanted in the market the gear type.

Starting with a system of gears which produces a certain relative movement between the spindle shaft and the thread-guide shaft, there are disclosed in the earlier Wardwell patent independent means, comprising levers, pawls, disks, cams, rock-shafts, etc., for adding an increment of motion to the spindle shaft. Again, starting with a system of gears which produces a relative movement between the spindle shaft and the thread-guide shaft, there are found in the Wardwell patent in suit independent means for adding an increment of motion to the thread-guide shaft, comprising additional gears and means (a disk and friction wheel) for shifting the position of the gears. There are also provided means for adjusting the friction wheel (screw shaft and knob), whereby the extent of the increment is regulated.

We have then, in the first Wardwell patent, a machine for winding a cop, composed of a system of gears and independent mechanism for giving the requisite increment of motion to the spindle shaft; such increment or gainage being necessary in order to lay the strands side by side instead of one above the other. We have in the second Wardwell patent which is in suit a machine for doing the same work by the same class of independent instrumentalities, with this addition, however: that means are employed for adjusting the extent of the increment so as to accommodate the machine to different sizes of thread.

Coming now to the question of infringement, I find that the fundamental distinction between the defendant's machine and the machine of these Wardwell patents is that the former is built, broadly speaking, upon Smith, or upon the cone-pulley type of mechanism. The defendant, in view of the prior art, had the right to obtain the requisite relative or normal movement between the spindle shaft and the thread-guide either by the use of pulleys or of gears; and, in a machine so organized, the defendant was also privileged to vary such relative movement for the purpose of obtaining the proper increment or gainage by the use of pulleys and a shifting device. On the other hand, the defendant was prohibited from employing any independent means for this purpose, such as are disclosed in the Wardwell patent in suit. A careful investiga-

tion of the prior art, and the lines along which it has reached its present high stage of development, shows that the Wardwell patent in suit must be limited to his specific independent means for producing the increment of motion, or to such independent means as are fairly the equivalent of those described in the patent, and that the use of other means which are not ·independent in the sense of the Wardwell invention, and which were well known in the art, is not an infringement. Since there are employed in the defendant's machine essentially· different means for obtaining the increment of motion, that machine does not infringe either claim 6 or claim 7 of the Wardwell patent.

## Wardwell Tension Patent, No. 509,413.

The Wardwell patent, No. 509,413, is for improvements in tension devices, whereby a uniform tension· is maintained throughout the winding. The specification says:

'It has been found that in certain classes of winding machines—as, for instance, in machines for building up or winding cops of elastic thread, such as silk—if the tension upon the thread is maintained uniform throughout the winding, the stricture upon the outer layers of thread in the cop, acting upon the elastic body beneath, causes the cop to bulge out at the ends. I have discovered that this may be corrected by gradually decreasing the tension as the cop increases in size, and my invention consists of means whereby such decrease in tension may be automatically effected."

The description of the apparatus shown may be summarized as follows: The tension device proper consists of a wheel around which the thread passes from the source of. supply to the winding spindle, the tension being produced by frictional resistance to the rotation of the wheel. The device for varying this frictional resistance is a brake composed of a pair of tongs, the jaws of which bear upon opposite sides of the· shaft to which the wheel is secured. The pressure exerted by the tongs on this shaft is regulated by an adjustable weight suspended from the tongs. By adjusting this weight lengthwise of the tongs, the leverage of the weight, and consequently the braking action of the tongs, is correspondingly varied. The weight is connected with a carriage, which is supported to travel on a stationary guide. The shifting of the carriage and weight along the guide varies the tensional effect of the wheel through the brake. The patent shows a bearing which constantly bears upon the surface of the cop, and which is connected with the carriage by suitable levers so arranged that, as the cop increases in size, the weight is shifted lengthwise of the tongs and toward the tension wheel, and so diminishes the tension on the traveling thread. The specification says:

"It will be evident that different kinds of variable tension devices for retarding the feed or movement of the thread may be used. * * * In order that the weight may be properly moved toward the pivot of the tongs in proportion as the cop increases in size, I combine with the weight certain appliances of any suitable character whereby it may be shifted according to the increase in the size of the cop. * * * Any suitable form of brake or friction brake may be employed, together with means for reducing its action in proportion as the size of the cop increases. * * * It will be evi-

dent that different shifting devices, altered in position as the cop increases in size, will, if connected with the movable weight, W¹, act with like effect."

This patent was applied for at the same time as patent No. 506,959, and in figure 4 of the latter patent is shown a detailed and practical illustration of one of the forms in which this tension device may be embodied. The specification of this latter patent says:

"I do not here claim the tension and thread take-up devices illustrated in figure 4 hereof, as the same constitutes the subject of a separate application for letters patent, serial No. 451,386," which is the tension patent in suit.

Only the first claim is in issue:

"(1) The combination with a tension device adapted to receive and act on a traveling thread, and means for varying the action thereof, a cop to which the thread passes, a movable bearing supported to be shifted on the increase in the size of the cop, and connections between said bearing and the means for varying the action of the tension device, substantially as set forth."

This claim is for a new combination. It accomplishes a new, or at least an improved, result in the winding art. No one before Wardwell had ever regulated the speed of the thread, or controlled the friction upon it, as the cop increased in size, without decreasing the speed of the cop rotation, with a consequent loss of winding capacity.

The essence of the Wardwell invention lies in the conception of an independent tension device, or a tension device which is separated from the cop mechanism, and which regulates the tension upon the traveling thread, as the cop increases in size, by means of a bearing or arm which rests either directly upon the cop, or, what is in effect the same thing, upon the sliding thread-guide carriage, in which case the thread-guide causes the carriage to move backward as the cop increases in size. In the operation of this device, the growing cop, either directly, or indirectly through the thread-guide and sliding carriage, shifts the movable bearing or arm, which, through its connections, actuates the tension device, thereby securing a uniform speed of the thread as it is delivered to the growing cop. The specification does not limit the invention to any particular form of tension device or movable bearing, or connections between them. The sole limitation imposed by the specification, the claim in issue, and the proceedings in the Patent Office upon the original application, is that the connection between the cop mechanism and the tension mechanism must be by means of a movable bearing, or a bearing of some such character as is described and shown, as distinguished from any kind of shifting devices. During the winding operation the thread-guide and spindle must of necessity gradually separate as the thread mass increases in size. To this end, either the thread-guide or the spindle may be mounted on a sliding carriage. In the Wardwell machine the thread-guide is mounted on a sliding carriage, and the movable bearing or arm which actuates the tension device rests on a lug of the sliding carriage. In the defendant's machine the cop is mounted on a sliding carriage, and the movable bearing or arm

rests on a projection of the sliding carriage. This is the only distinction between the two structures, aside from the difference in the specific form of the tension device and connecting mechanism. There can be no question that the defendant has embodied in its machine the Wardwell conception of an independent tension device, which is only connected with the cop mechanism by means of a movable bearing, and which, through this bearing, regulates the tension upon the traveling thread as the cop increases in size.

The position which this patent occupies in the art entitles the first claim to a fairly liberal construction. The Wardwell conception of a tension device was new, and the extensive presentation of the prior tension art in the present record only emphasizes its novelty and utility as applied to the winding art.

Claim 1 includes the following elements: (1) A tension device adapted to receive and act on the traveling thread. (2) Means for varying the action of the tension device. (3) A cop to which the thread passes. Although the defendant's tension device and the means for varying the action thereof are different, it has employed in its machine well-known equivalents of these elements. (4) A movable bearing supported to be shifted on the increase in the size of the cop. In defendant's machine there is found a movable bearing or arm supported to be shifted on the increase in the size of the cop, which rests upon a projection of the sliding cop carriage, and which has the identical function of the Wardwell bearing. (5) Means for varying the action of the tension device. While differing in specific form, the equivalent of this element is found in the defendant's machine.

Upon full consideration, I am satisfied that the defendant's machine infringes claim 1 of this Wardwell patent.

### Wardwell Conical Cop Patent, No. 562,263.

The Wardwell patent No. 562,263 is for improvements in cop-winding machines, and relates especially to conical cops. The specification says:

"It is considered advantageous for many purposes, and especially for those in which use is made of cotton yarns, to employ cops of yarn of a conical shape. It is more difficult and expensive to wind such cops in the ordinary manner because of their unequal size at the opposite ends, of the necessity, in some cases, of having solid conical blocks for winding the thread upon, and the ordinary modes of winding such cops are apt to result in laying the thread irregularly, so that the cop is not of a uniform character throughout. The objects of my invention are to wind such cops with the same facility as the ordinary cylindrical cops, to adapt my improved means of winding to existing machines without material alteration thereof or preventing their use for winding cylinder-cops, and to enable me, in winding tapering or conical cops, to make use of the mode of winding set forth in my letters patent Nos. 480,158 and 486,745."

In a machine for winding cylindrical cops, the winding shaft is always straight, and therefore always remains parallel with the path of the thread-guide. In a machine for winding conical cops, the winding shaft is bent, with the result that one of its sides is always parallel to the path of the thread-guide. It is apparent that a

cylindrical-cop machine, with its straight winding-shaft, is not adapted to wind conical cops, and that a conical-cop machine, with its bent winding-shaft, is not adapted to wind cylindrical cops. In the patent in suit, Wardwell first describes a conical-cop machine with a bent winding-shaft, and this is illustrated in Fig. 1 of the drawings. The cylindrical-cop machines were in common use, and could not be adapted to wind conical cops without an alteration in their construction, whereby a bent winding-shaft was substituted for a straight winding-shaft. In order to avoid the necessity of making this change in construction, Wardwell conceived the idea of building a conical cop-holder which could be operated upon the straight shaft of the old cylindrical machines. He accomplished this by means of a stationary conical support having an opening parallel with one of its sides, which was placed upon the spindle of the old machines. The cop-holder was then superimposed upon this support, and connecting means were provided, whereby the cop-holder was rotated with the winding shaft. The specification says:

"The arrangement illustrated in Fig. 1 would necessitate a special construction of machine, and, as it is desirable in many instances to adapt my improvement to machines already in use, I have provided means whereby in such machines the conical holder may be arranged with one side parallel to the path of the guide, and yet be positively driven from the ordinary winding-shaft, which is also parallel to the path of the guide in existing machines. In such case I provide a hollow conical holder, $B^1$, Figs. 2 to 6, which I arrange upon a conical support, K, which is suitably secured to the frame, $H^1$, of the machine; the winding end or spindle, t, of the shaft, $A^1$, extending through an opening in the support, K, which is parallel to one side of the support; the latter being arranged so that the said side is also parallel to the path of the guide. The holder, $B^1$, is placed upon the support, K, and is provided at the larger end with an annular rack, f, for engaging the pinion, g, upon a spindle, h, turning in a bearing of the frame, $H^1$, and having a pinion, i, engaging a toothed pinion, J, upon the shaft, $A^1$. As the shaft, $A^1$, revolves, it turns the holder, $B^1$, through the intermediate gears, thereby rotating it positively in relation to and in unison with the movements of the reciprocating guide, B, and obtaining the same result as shown in Fig. 1, except that the support, K, and conical holder may be removed whenever it is desired to wind a cylindrical cop. In Fig. 3 a gear-wheel, $j^1$, connected detachably to the spindle, t, by a set screw, engages a gear, $f^1$, at the end of the holder, which is prevented from turning by a pin, m. In the construction shown in the remaining figures of the drawings, the frame, $H^2$, cam, X, shaft, $A^1$, expansion wheel or pulley, G, pulley, F, belt, C, swinging frame, L, supporting a reciprocating bracket, M, to which the guide, D, is secured, are all substantially such as set forth in my aforesaid patent, No. 536,672, and operate in like manner, and need not here be particularly described."

Claim 3 is alone in issue:

"The combination in a winding-machine of a guide, and means for reciprocating the same, a stationary support for a cop-holder, a cop-holder with one side parallel to the path of the guide, and means for rotating the same upon the support, and means for securing a variation in the relative movements of the holder and guide, substantially as set forth."

This claim is composed of the following elements: (1) A guide. (2) Means for reciprocating the guide. (3) A stationary support for the cop-holder. This is the conical support, K, with an opening extended through it which is parallel to one of its sides. (4) A

cop-holder with one side parallel to the path of the guide. This is the hollow conical holder, $B^1$, which is placed upon the stationary support, K, and which has one side made parallel to the path of the guide by virtue of the support, K. (5) Means for rotating the same upon the support. (6) Means for securing a variation of the relative movement of the holder and guide. These latter means are specifically set forth in the Wardwell patent, No. 536,672.

The essence of the invention covered by this claim resides in the conical support, K, and the claim must be limited to a device which includes such a support. The prior art forbids any broader construction of the claim, since it was old to wind conical cops by mounting a winding spindle so as to maintain one side of the cop always parallel with the path of the thread guide. In defendant's machine, the stud or nonrotating bearing which supports the conical cop or spindle is bent, just as the winding shaft is bent in Fig. 1 of the Wardwell patent, so that one of the sides of the spindle is always brought parallel with the path of the thread-guide. The defendant's machine therefore does not contain the conical support, K, of the Wardwell patent; in other words, there has been eliminated from this machine the very substance of the Wardwell invention.

A decree may be drawn for complainant with respect to claim 1 of patent No. 509,413, and dismissing the bill as to patents No. 506,-959 and No. 562,263. The question of costs is reserved.